On behalf of the appellant, Mr. Roger B. Weber. On behalf of the appellant, Ms. Catherine D. Saunders. Thank you, Your Honor. Ladies and gentlemen, counsel, my name is Roger Weber. I'm here on behalf of the appellant, Geanette Whittendorf. And this case arose during the prosecution of a criminal case. And it was a case entitled People v. Gardner. Which was recently reversed by this very court based upon prosecutorial misconduct. And at first blush, it might appear that that's, sorry, Your Honor, looks perplexed. Ms. Whittendorf was prosecuting in the Gardner case and at the conclusion of that case was found in contempt. And thus, these proceedings. The reversal of the Gardner case based upon prosecutorial misconduct might at first blush suggest that her appeal of the contempt is not well taken. But when you look at it, I think it's pretty clear the issues are different. In the criminal prosecution, obviously the issue is what impact, what effect did her conduct have upon that defendant's right to receive a fair trial. Whereas on the contempt issue, we need to focus on whether or not the facts show that the particular conduct was calculated to embarrass, hinder, or obstruct the court. We've challenged that the finding of direct criminal contempt fails for two reasons. One, there was a lack of appropriate due process, notice, opportunity to defend. And also just that the facts that the court relied upon do not support the finding of direct criminal contempt as opposed to mere good faith trial advocacy. The points that the trial court seemed to focus on were a number. One of those was that the prosecutor continually repeated questions after which objections had been sustained. Most of those, if you look through the record, were objections to the form of the question and that she was leaving. And I would suggest that it's merely good faith or proper advocacy that when an objection to the form of a question is sustained, the appropriate response is to rephrase the question. Now, eventually, if you just can't give it, you need to move on. And it's clear that in several circumstances, that's what happened in this case. The other, the primary contention is that there was a lack of due process because the trial court, rather than halting the prosecutor when she was engaged in the conduct that he ultimately found to be supportive of his finding of contempt, he postponed his ruling on that issue. And, in fact, nowhere in the trial record does the word contempt show up when he's talking to her about her conduct. There are occasions when he instructed her to stop doing what she was doing. There were several requests by the defense attorney for some kind of sanctions, but those were always met with either a comment such as we're going to move on or I'll deal with that later, if at all, or something else to suggest that no immediate action was necessary. And we're asserting that that's the essence of the direct criminal contempt. Is it unusual, counsel, though, for courts, in order to protect the rights of the defendant, is it not unusual for the courts to hold contempt findings until the end of the trial? I don't think it's unusual to defer the sanctions, but I think if the contemptuous or allegedly contemptuous conduct is such that it's interfering with the orderly flow of the trial, the court should take immediate action. And if it's not such that it's going to interfere with it, then I think the court could admonish or warn the attorney that their conduct is being considered contemptuous or it may be considered contemptuous and defer further proceedings. But I think if it's the essence of it being direct criminal contempt is that it's of such a nature that the court has to act now to maintain the decorum of the proceedings. But that's not necessary, that the court act right then and there. I don't think they have to absolutely in all cases, but I think the fact that they don't tends to disprove the fact that it was necessary to maintain the propriety of the proceedings. And in either case, if the court does wait, and one of the cases cited in the briefs was a U.S. Supreme Court case, and I can't recall the name off the top of my head. Satchin? Perhaps. When the trial judge told the defense attorney, I've got you on nine counts of contempt. And in that case, throughout the course of the trial, as you read the decision, the court admonished him each time that he did something. The court said, that's contempt. And then moved on and moved on. And even under those circumstances where in the middle of the conduct, the court said, this is contempt, not just you need to move on, you need to stop asking these questions. It said, this is contempt. The Supreme Court found that that was not adequate to satisfy due process and that he was entitled more in the nature of notice of the charges and an opportunity to defend those charges. The other issues that the court seemed to focus on were two. One was the allegation that the prosecutor had intentionally misrepresented what her expert witness was going to say. I'm going to suggest that when you read the transcript of the voir dire of that expert witness, it becomes obvious that this was a young prosecutor who was overwhelmed. And the record that's now before this court shows that up until a month before this trial, Ms. Wittendorf was to be the second chair on this case. And had been working on the case under the supervision of Charles Prorock for a lengthy period of time, I think in excess of a year. Within three or four weeks or six weeks of the trial, Mr. Prorock left that office. Ms. Wittendorf requested a continuance from the trial court, which was denied. And she requested of her boss that they assign help for that case. Is that correct? Her motion to continue is in. Can you tell me that she requested help from her superior? I think it's in her affidavit that was filed. I'm not absolutely sure. And you said it's clear she's inexperienced or young or something. Is that in the record, too? Her tenure in the office or as a lawyer, is that part of the record? I'm not sure if that's also in the record. But it is clear that Mr. Prorock was the lead counsel for most of the trial preparation period for the year leading up to this. And had she had a more senior attorney or a second chair helping her, there is a reasonable probability that a lot of these problems that she got into, where she was asking questions and the court was sustaining objections and she was trying to rephrase it but not doing a very good job, it's obvious that she just was overwhelmed and got stuck. And had she had a second chair or had she been more experienced or both of those, perhaps she would have figured out how to properly ask those questions and move past the things that were causing the court problem. The inability to expertly ask a question should not necessarily be construed to be intentionally designed to hinder or obstruct the court. So it's a very complicated case. There were four main victims. The fourth one came forward at the last minute after the trial had started. And I think many of the things that probably upset the court were really the result of the time crunch, the inexperience of the attorney and the lack of there being a senior attorney. With respect to this testimony of the expert, I think that she was questioned outside of the jury. She was. A couple of times. I'm sorry? A couple of times. I think that's correct. It was a lengthy voir dire. And the trial court said I think his words were, her testimony is clear as can be. And I cannot agree with that assessment of the court. Having read that section of the voir dire of this expert several times, I'm not sure that the expert clearly says that virginity is never an issue. And then she sort of explains that virginity or sexual experience would be factors that would cause trauma to the person while it was going on. And she seems to say that that status would make things more traumatic to the person, but not necessarily be a factor or a symptom of the rape trauma syndrome. Did she ever say clear? Did she ever say, as clear as can be, that virginity and sexual inexperience were one and the same? I don't think she said that expressly, used those exact words, but she talked about them almost as if they're interchangeable. And if you look at the weight that she gave to that, she talks about the lack of experience, not being sure what's going on, not believing that a person that you knew would act in this way. It's clear, or I think it's fairly clear, that she's treating them as just a difference of degree and not necessarily a qualitative difference in the condition of the victim. But at any rate, for the court to find that she was intentionally misleading it about what she was going to testify clearly calls for information not available through the direct presentation to the court. He would have to know that the witness had never, ever told Ms. Wittendorf, yes, virginity is a factor that I consider. And the affidavit of Charles Prorock says that she clearly did say that during some of their pre-trial telephone conferences. When we're looking at contempt counsel, are we to be looking at affidavits? Are we supposed to just be looking at what occurred at the trial court and what the trial court judge had observed? Well, if the trial court judge is clearly basing his decision only upon what's there and not making any inferences or forming opinions about what must have happened, then... Well, aren't we to assume that? That if he's going to find her in direct contempt, he's finding her in direct contempt with respect to what has occurred in front of him, not with respect to what an affidavit would show later on. Isn't that correct? That is correct, but the point I'm trying to make is that's why direct criminal contempt is inappropriate because he's finding her in contempt for something that didn't actually occur. And he has to have made an inference about what the witness had told her before. That's why we don't think that the direct criminal contempt procedure was proper in this regard. But didn't he find her in direct criminal contempt based upon what the witness said in his presence? Right, he did. But that belies the fact that he cannot possibly know whether Ms. Wittendorf had a good faith basis to say, this is what my witness will say, unless he knows what their conversations had been. Outside of his presence. Outside of his presence. Like the cases that talk about an attorney being held in contempt for being late to court, and there's one case where the judge asked the bailiff, go see if he's in trial in the other courtroom. Obviously he's late. You know that from your direct knowledge, but you can't know whether he's held up by another courtroom without outside information. And this is similar to the issue of what the expert witness had said. Would these be a relevant inquiry for indirect criminal contempt? I think it would be. But then she would be entitled to notice and a hearing and the right to defend. So I believe that would be, and I think that that's part of where we think the trial judge made a mistake during this trial. The other issue that we've raised is the trial court's denial of her request to have counsel appointed when the state's attorney's office indicated it was going to withdraw. And we're suggesting that the trial court abused its discretion in that it never even got to the point where it exercised discretion. In his order denying that request for appointment, the trial court ruled that she was not entitled to appointed counsel. In the brief, the state has conceded that the state's attorney had a duty to represent her. So I don't see how it cannot be an abuse of discretion to make the decision before you even get to the part where you're employing your discretion and balancing whether or not you should or should not be appointed. So what do you suggest we do with respect to that issue? They reverse his ruling denying the request for appointed counsel and remanded so that counsel can be appropriately compensated on the county's dime or the state's attorney's expense, not on this wit and dors on her own tab. The cases that talk about that suggest that the state's attorney has a duty to represent all officials for matters that arise in the course of their official conduct. But the state's attorney can elect not to proceed for various reasons, and that official can elect to seek outside counsel. The one case where the county official, county board member, I believe, got in trouble was by hiring a private attorney and then just accepting county money without seeking the appointment of the court. And we think Ms. Wittendorf did seek the appointment of the court. The court should have granted her request, and I could have easily appointed someone else as opposed to the person that she had chosen, or I could adjust the rates of pay because counsel came from a farther distance. But clearly, she was entitled to appointed counsel to defend her on this matter. But is the remedy here what she paid that attorney or what the county would have paid a special prosecutor? I believe the remedy is what the county would have paid a special prosecutor. Counsel, can you touch briefly, I'm not sure if you were going here or not, but can you touch briefly on the non-pro-tunk order that was entered? I can, certainly. The non-pro-tunk order we've suggested was not properly a non-pro-tunk order in that it was different than what was in the trial record originally. When the court found Ms. Wittendorf in contempt, it recited a lengthy list of things that it was basing that decision on. And then there was a perfunctory handwritten order prepared by, I think, one of the assistant state's attorneys who was in court. Later, apparently after getting the transcript of the trial, although that's not in the record, the court went through and prepared the rather lengthy written order detailing each basis for his finding of contempt. Adding additional. He did add additional things, and he extrapolated on some of the things that he already found. And it's our position that's not properly a non-pro-tunk order and shouldn't be considered. But even if you did, we still think that the lack of the notice and opportunity to defend on the issue of contempt would make it such that this is not a proper direct criminal contempt finding. Time on rebuttal then, counsel, thank you. Yes. Thank you. Ms. Saunders? Good morning. May it please the court. Counsel. I'm Assistant Attorney General Kathleen Saunders on behalf of the appellee. I wanted to touch briefly before I get to the merits on an issue that my opponent didn't really discuss, which is the question of jurisdiction over the contempt issue. There were two separate orders on the February 4th and entered February 5th. One denied the motion for reconsideration of the contempt finding. The other denied the motion for appointment of counsel. And if you look at page 26 of the white brief in the appendix, it's a notice of appeal. And paragraph 7 says, if the appeal is not from a conviction, the nature of order appealed from. And they specify that they're appealing only from the denial of the motion for appointment of counsel. Therefore, we submit that this court has jurisdiction only over that issue, the motion for appointment of counsel. But even if this court were to conclude that jurisdiction were proper, there's definitely sufficient evidence to support this contempt finding here. From beginning to end, contempt is counsel's threat to disrupt the orderly proceedings and the process in this case. For example, from the beginning of trial, when counsel organized her, she ignored the court's deadline for filing motions in limine with respect to defense witnesses. To the end, when in sentencing, she failed to disclose a witness that she intended to use in aggravation. Her counsel's conduct obstructed the court's conduct of the entire underlying trial and the court said he simply could not stop the proceedings at every instance where contemptuous conduct warranted and find her in contempt. Instead, he admonished her at the time and then deferred imposition of sanctions until the end of trial. Counsel, is there a difference between inexperience and willful behavior? And do you think that that may be a factor in this case? And if not, why? The intent is just simply that she must intend to commit the conduct. She did not specifically intend that her conduct be contemptuous. So there is a distinction there, and I think there's definitely sufficient evidence of intent here. She certainly intended, for example, to have the court revisit its ruling on the virginity evidence. In the motion in limine, the court excluded evidence of the victim's virginity, and she specifically asked the court to revisit that question. And she said, very important that sexual inexperience and virginity were not the same, and it was evidence that virginity needed to come in. And based on the representation to the court, the court reversed itself and permitted the three victims to testify that they were virgins at the time of the offense. Then, of course, when the expert came back, the expert, I think it's very clear, as the trial court did, said that it's not the case that sexual experience and virginity were the same with respect to rape trauma syndrome. But it wasn't clear, I mean, to the trial court. If you read the transcript with respect to the questions that the trial court had asked, was he not asking questions over and over, attempting to answer the question of virginity, and was it ever really answered by this expert? I'm sorry, I'm not sure I understand your question. I'm reading the transcript of the testimony between the court and the expert, Catherine McDermott, and it seemed that the court was trying to get to the bottom of virginity versus sexual inexperience. Was that question ever really answered by Ms. McDermott outside of the presence of the jury? I believe that it was answered outside the presence of the jury. I don't know that I have the exact language in front of me. But essentially what happened here is that the judge permitted counsel to, in fact, prove that there was that distinction, that virginity was crucial to the basis of her rape trauma syndrome as opposed to mere sexual experience. And the expert did, she was less than clear, she did somewhat waffle, but at some point the judge himself was able to pin her down. And then he did give contender another opportunity to try and get her to extract from that witness the virginity versus sexual experience distinction. But how about what counsel says, how did, what was said to Ms. Wittendorf by the expert outside of the court's presence? Do you think that plays a part in light of the fact that the court had the opportunity to examine her? It could only to the extent that it came out during the proceedings. Direct contempt, direct criminal contempt has to be observed directly by the judge and the court. She could have, rather than saying, wait, let me back up a second. If, in fact, the judge, the witness had said something else, at that time, that was the time for contender to come forward and say, Your Honor, I firmly believe, I apologize, I firmly believe this witness has gone south on me here. I firmly believe that the basis of her testimony, the virginity was the linchpin of this and the court could rectify it. But what troubled the judge here is that the contender backpedaled and said, Oh, well, no, virginity and sexual experience are the same thing. So the judge found that she affirmatively misrepresented the basis of her expert's opinion in order to gain a tactical advantage in this case. And, you know, if, in fact, the witness had gone south, that was the time for her to speak up and bring that to the court's attention. So to the extent that, you know, there were discussions outside of court, that would figure at that point, she could bring those to the court's attention. Do you think perhaps the court may have had a different position had these kids not testified first? Pardon me? Do you think the court may have been in a different position had the children not testified first? Correct, yes. By that point, right, the three victims had testified to the fact of virginity and the court then had to go back and instruct the jury to disregard that testimony and said that they could consider sexual experience but not virginity per se. This wasn't an isolated incident either. Counsel repeatedly asked the same leading questions and then when encouraged by the judge to leave the topic, she said in a tone that he found disrespectful, I'll move on. And, of course, we can't tell from a full record what the tone was, but we do have to defer to the trial court's judgment and his credibility determination at that point. Counsel quieted the... He said, I'm sorry, in his order then, remind me that he said something about her tone of voice. Yeah, he found that when she said, I'll move on, that she said it in a tone of voice that he did not appreciate. He found disrespectful and implied he found to the jury that somehow she was being prevented from presenting to the jury some important information that the judge was preventing her from presenting this information to the court. Okay, thank you. She inquired if she was inappropriate and the contender concedes that her sue the county question was inappropriate. You may recall she asked of the witness whether the defendant's grandfather had threatened to sue the county. Irrelevant to the issues of collateral matter, the defendant's grandfather had not testified. What was her basis for asking that question, though? Was it for impeachment purposes? Was that what she said to the court? She thought that the officers, Olson and the other officer, whose name escapes me at the moment, would testify that he had threatened to sue. Again, what troubled the judge here was that she was not specific about it. She had a vague notion that the grandfather had threatened to sue, but when it came down to it, he hadn't threatened to sue the county. In fact, he had threatened that when this was all over, he was going to sue the complainants, which again, of course, is also irrelevant, but this was highly prejudicial. As the defense counsel pointed out at trial, they're all taxpayers, and in fact, if he was going to sue the county, they may incur a liability. Counsel, the contender also concedes that her statement in closing argument about the first prey that we know of was also improper. You may recall that during closing argument, that on this bed, this serial rapist took his first prey that we know of here in Rockford, Illinois. Of course, that implied that there was other uncharged conduct. At some point with all of this, as you describe it as improper comment or improper questioning, at some point, do you think the court could have found, declared a mistrial? Could have, and defense counsel certainly asked that he do so, but it was his objective, he said, to bring these proceedings to a conclusion in a relatively error-free way, I believe were his exact words. It was a sensitive case. If he felt it was an error-free way, then why would he find her in contempt? I cannot answer that. I do not know. Well, no, I guess I do have an answer because there's a difference between legal error and disrespect for the court and disruption of the proceedings. I think you can definitely draw a distinction there. If she is disrupting the conduct of the trial, for example, he said based on her repeated asking and pleading questions, et cetera, they had to have so many sidebars, and that a trial that should have taken one week took two and a half weeks to bring to conclusion. So it's not so much that there was legal error, but that her conduct disrespected the orderly proceedings and disrespected the judge. Okay. Briefly, I'd just add, you know, there were other factors that the court cited in support of its contempt finding. She was chronically late for court. Well, isn't that indirect? Pardon me? Isn't that indirect contempt, lateness? I don't believe it's incorrect. We don't... Indirect or rect? Is it indirect? No. Is it indirect? Indirect. Lateness. I mean, what was her basis for being late? Did she have an excuse for being late? Did he give her an opportunity to tell him why she was late? No. This differs. Chronic lateness, I would argue, differs from the occasional. There are cases where the counsel is late one time and may not give an opportunity. That would be indirect contempt. But here she was chronically late for court. The court said almost every day she was late and left the jury and the judge waiting. And he inferred from the chronic nature of it that it must be, you know, intentional that barely she didn't care to appear in court on time. It's the chronic nature of it that disturbed the judge here. Could you speak to that non-protonic order? Pardon me? Can you speak to the non-protonic order? Certainly. It's actually not captioned in non-protonic order. In fact, it's captioned in amended order. And what the trial judge said is that when he asked the assistant state's attorney to file a draft in the initial order, it simply was inadequate. It didn't properly reflect the basis for his contempt finding. And so he wished to issue an amended order that properly reflected, more accurately reflected the basis for his contempt finding. But didn't the non-protonic order, you know, call it what you will, but it's going back. It's non-protonic. Didn't it add additional findings than it had in the original record? No, I don't see that at all, Your Honor. No, I don't believe so. When he orally made his findings, you believe that he mentioned the motion in limine and the aggravated witness, aggravation witness, excuse me? To the best of my recollection, yes. I would have to go back and compare the transcript. Again, he found contempt immediately at the close of the sentencing proceedings, and there's a transcript of that hearing. To the best of my recollection, this amended order does reflect the court's findings at that hearing. I'm sorry, I need a little clarification here. Maybe I missed something. Where did the notion that it's, where did the label non-protonic come from then? I don't know that it was labeled, it's not labeled non-protonic, but the court entered it non-protonic to the earlier date. So it's an entry. Why does it have to, what's the significance of saying that this? I believe there's no significance to it. It's an amended order, he did not need to add it, yeah. It need not be non-protonic to the previous order, it's simply an amended order. It apparently was important to Judge McGraw, but I don't see that it has any legal significance here. But once it's issued as a non-protonic order, there are limitations on it, correct? Pardon me? You call it what you want, but once it's, once it is issued as a non-protonic order, once it's issued as an order going back to the original date, there are limitations on what you can do in a non-protonic order, aren't there? That's correct, it must accurately reflect the proceedings that occurred, that's correct. But it was the judge's intention to simply, here,  I'm touching briefly on the due process issue. There's a question here that counsel had both notice and an opportunity to be heard. She was frequently given the opportunity to explain her behavior at trial. Well, but at the time, at trial, as has been pointed out by questions from my colleagues, she wasn't warned that her response was in connection with a potential contempt finding. He never used those words during the trial, right? She was certainly unnoticed. She was warned that her behavior was inappropriate, improper, and defense counsel had asked for sanctions, had asked for contempt findings. Excuse me, I missed trial. Okay. So, no, the judge did not specifically say, be careful or I will find you in contempt. But I don't believe he needs to do so under the law. Not only was she permitted to, for example, with her expert witness, she was given ample opportunity to present the basis for that opportunity in an attempt to prove that her assertion to the court was correct. And again, with the Southant County statement, she was permitted to call the detectives and address the basis for their decision. And also at the close of the contempt finding, she was given an opportunity to speak. Now, she didn't avail herself of that opportunity. She, you know, issued an apology, and I can see why one would do that in that circumstance. But she also had an opportunity to speak at that time and address the court's findings. Before you step down, what about this issue of counsel? She was entitled to counsel. Do you agree with that? Pardon me? She was entitled to counsel. She was entitled to counsel, yes, under the State's Attorney's Act. She was entitled to be represented. The records sound entirely clear. The State's Attorney apparently believed they might have a conflict because the State's Attorney would also have a duty to prosecute the contempt. No, I understand that. But she was entitled to an appointment of separate counsel from the State's Attorney. She was not entitled to an appointment of separate counsel because in this instance, the judge permitted the contempt to go. Basically, there was no prosecutor, and so there was no conflict. There would have been a conflict if, in fact, the State's Attorney had to represent both prosecuting and defending against contempt. Once the State's Attorney steps up and says, I have a conflict, I will not represent her, isn't she entitled to other counsel? Pardon me? Isn't she entitled to other counsel once the State's Attorney says that he will not represent her? The last filing in the record is a motion by the State's Attorney asking for an extension of time to file a motion to reconsider the contempt finding. And it specifically says, we're so sorry that we couldn't file this sooner, but it took us a while to research, and now we realize we have no conflict. The record is not clear on the question of conflict. And then later, the way the trial judge viewed it is that the State's Attorney had come forward and said, okay, we've researched it, we have no conflict, and the contempt went out and hired private counsel, and that she was seeking to have the county pay for her private counsel. Well, didn't the State's Attorney make a motion to withdraw because they had a conflict, and then she went out and got private counsel? There is no such motion in the record. Did you concede this issue in your brief? We conceded that she had a right under the State's Attorney's Act. It's not a concession. As a legal matter, she would have a right under the State's Attorney's Act to have representation, but what we said is that there's no conflict here. There was a potential conflict had the State's Attorney been required to be on both sides of the contempt question, but because she was allowed to proceed in the absence of a prosecutor, there was, in fact, no conflict, only a potential conflict, and therefore, the State's Attorney should have represented her at that proceeding. But they didn't. But they didn't. But they did not. So, therefore, was she entitled to counsel? She was entitled to have the State's Attorney represent her, yes. And they said, we're not going to represent her. The last filing in the record from the State's Attorney's Office says we have no conflict. Were they present on the day that the judge made his contempt findings? Pardon me? Was the State's Attorney present on the day that the trial judge made his contempt findings? As far as I can tell from the record, Ms. Wittendorf was there, but the State's Attorney himself, I'm not aware that he was there. So she was unrepresented at that time by the State's Attorney. Is that correct? That's my understanding. Okay. Thank you, Counsel, and we vote. Initially, the State has challenged the sufficiency of our notice of appeal to even raise the issue of direct criminal contempt. Our notice, I think, gives fair notice that we intended to appeal both the finding of direct criminal contempt and the denial of the motion for appointment of counsel. It probably could have been a little clearer. We could have said the offense of which convicted direct criminal contempt, and we're also appealing from a conviction, or we're also appealing from something that is not a conviction and point out the denial. But I think there's no way that the State's not on notice that we intended to challenge both those issues. My co-counsel has reminded me that each of the affidavits, the affidavit of Charles Primark and the affidavit of Ms. Wittendorf herself, support the inference that she was inexperienced and a fairly new attorney in that office. The other affidavit, as well, shows that there were other facts. For example, the inappropriate victim witness impact statement that the court used as one additional basis for the contempt. The other affidavit from the other assistant attorney shows that Ms. Wittendorf had nothing to do with the preparation or presentation of that statement, yet the court used that as part of its basis for contempt. Let me ask you a question. Let's go back to that expert witness because I think that's a pretty complicated issue. The children testified first based upon the prompting and the pleading of Ms. Wittendorf. I don't want my client or the witnesses to have to come back. I don't want the kids to have to wait. Let's not do an offer of proof with the expert first. Let's put the kids on. So the horse is out of the gate, if you will, at that point. Then the expert, kind of as counsel suggests, goes south on her. Do you feel that this might be a different issue had it been flip-flopped, had the offer of proof come first and the kids had not already testified? I'm certain it would have been a different issue because then the court could have re-amended its ruling on the motion in limine and prohibited the children, the victims, from saying the word virgin. And that whole issue becomes very, very minor to this appeal. Then it was upon Ms. Wittendorf's insistence that that motion in limine did not go forward first, correct? Yes. But I would say that doesn't show that she was being willful or disobedient to the court or trying to mislead the court. She was trying to convince the court to let that testimony come in because she at that time believed that her expert witness was going to back it up and was going to support it. When the expert witness went south on her, it would have been wonderful if she would have pointed that out to the court. But I'm going to suggest that that's not proof that she's trying to trick the court or lock it in. I'm going to suggest that's a young and experienced attorney who suddenly got vaulted from second chair to sole counsel for this trial, trying to salvage what's left of what appears to be a wreck. She obviously believed it was very, very important to get that testimony in to explain the failure of the victims to come forth immediately and some of the other behavior that she did. I think when you look through it, it suggests to me that she was confused about the expert's opinion as a distinction between being virgins or sexually inexperienced would cause behavior during the actual attack. You might not fight back. You might not scream. You might be totally shocked and just stupefied by what's happening. That's not necessarily a symptom of post-traumatic stress behavior. And I sort of think it's just an inference from the record that she got those concepts confused and wanted it in there desperately. And then when the witness went south on her, she panicked and tried to salvage by glomming on to the one comment that the witness did say to the effect that virginity or sexual inexperience would cause this type of thing and using them sort of interchangeably. I'm sorry, the expert witness did say that? There was a quote, and I think it's in our brief, where the expert witness said, well, virginity or sexual inexperience would cause the person to be more traumatized, to be more surprised, or words to that effect. I think she said for young people that have never been sexually active. Yes. So I think the experts sort of treated them the same, but according to the affidavits, which the trial judge did not consider, that would have shown why Ms. Wittendorf tried so hard to get the judge to rule on the motion and eliminate. And she never had the opportunity to present that explanation. She was never warned. Counsel raised the issue about the tone of her voice, and the trial court did clearly say that she said I'll move on in a tone that was disrespectful. I think those were the court's exact words. But in the case of People v. Roberts, the appellate court reversed the finding of drug criminal contempt to the extent that it was relying, at least in part, on a comment by the contemporary attorney who said, oh, I'll withdraw it in a very animated, sarcastic fashion. There were other things that that attorney had done, which did support the contempt finding were full of unappeal, but the oh, I'll withdraw it in an exasperated tone was found not to be sufficient by the appellate court. I think clearly the court could have declared a mistrial, but at every opportunity, when it rained, when it called Ms. Wittendorf short on something she was doing, she apologized and tried to explain I thought I was changing my questions, for example. So I think there's nothing in here to show that her behavior was anything but inexperienced as opposed to willful, and we're asking for the review. Hold on one second. You made a point a couple times of saying that we can't infer, the record doesn't allow a proper inference that she was deliberately trying to be disrespectful and willfully trying to derail the proceedings along those lines. Now counsel for the state says that the willfulness goes to the, the burden is not to show that she willfully wanted to be in contempt or be disrespectful, but that she was knowing what she was doing, not whether the consequences would be. I understand that you guys have painted two very different pictures of what intentional means in this context. And I don't disagree with opposing counsel, but I think the difference becomes if you are in the heat of battle and you are fighting and fighting to try to get a point made, and the court is overruling objection or sustaining objection after objection, and you keep in your own mind, you think you're rephrasing the question and you're fighting to get that point out. If the court says, counsel, I think your conduct is in contempt. I want you to stop. That's going to cause the attorney to pull back and say, I better reexamine this. I thought I was being a zealous advocate. Perhaps I've gone too far. A fair warning maybe derails this whole content process. And that didn't occur here. I have one additional question. You have both addressed some of these topics as very individual. What about the expert witness, the repeated questions, the victim impact statement, whatever it would be. What about the cumulative impact of your client's conduct? I think the cumulative impact would have entitled the defendant to a mistrial. And I would also suggest that had the court more explicitly warned her about her behavior, the cumulative impact could have been greatly lessened because she could have corrected her behavior had she given a more proper or adequate notice. I have one further question. In the trial court's order denying the motion to appoint a special process, a special prosecutor, did the trial court state something to the effect that the state's attorney had no duty to defend the defendant to represent the defendant? I can't recall without looking at the order, whether he said no duty or whether he said she's not entitled to appoint counsel. But either way, I think to properly exercise his discretion, he finds that she has the right to and then he balances the factors to apply his discretion in making the decision. Does he have discretion? I think the statute says that the trial court does have discretion. The statute provides that she has a duty, but I think the statute or the other cases say the trial court has a discretion in not appointing. And perhaps that just means as to who gets appointed, but I think it says there is. All right. Thank you both for your arguments. The matter will be taken under advisement. Decision will issue a new course. There will be a short recess before we cover the next case.